Morley **OERTHER** and Charles Oerther,
d/b/a Oerther Brothers Service, a
partnership, Appellants,

v.

**PENNZOIL COMPANY**, a foreign
corporation, Appellee.

No. 6–33.

Temporary Emergency Court of Appeals.

Submitted on the Briefs.

Decided April 23, 1985.

Andrew J. Haliw, III and Karen L. Faber, Sullivan & Leavitt, Northville, Mich., were on brief, for appellants.

Donald B. Miller, Butzell, Long, Gust, Klein & Van Zile, Detroit, Mich., and Bradley Ford Stuebing, Houston, Tex., were on brief, for appellee.

Before METZNER, BONSAL and LACEY, Judges.

METZNER, Senior District Judge.

Plaintiffs Morley and Charles Oerther, operators of a retail gasoline service station, appeal from a judgment of the Eastern District of Michigan (Freeman, J.) dismissing as time barred their action for overcharges under the Emergency Petroleum Allocation Act (EPAA).

This is an action to recover compensatory and double damages pursuant to Section 210 of the Economic Stabilization Act, 12 U.S.C. § 1904 Note, as incorporated in the EPAA, 15 U.S.C. § 751, et seq., for alleged overcharges in the sale of gasoline. Plaintiffs allege that defendant violated 10 C.F.R. § 210.62, which prohibits modification of normal business practices during the regulated period, and that this violation led to overcharges under 10 C.F.R. § 212.-82.

At the time of the initiation of price controls, plaintiffs and defendant had maintained a long-standing business relationship. Plaintiffs purchased gasoline from defendant at a price F.O.B. plaintiffs' service station. Plaintiffs owned their own tank truck, however, and often arranged to pick up their gasoline at defendant's refinery. On such occasions the sales invoices included a hauling allowance or transportation credit (a cents per gallon reduction in the price plaintiffs were to pay for the gasoline) as a separate line item to compensate plaintiffs for bearing the freight cost.

In October 1973, several months after price controls had gone into effect, defend-

ant notified plaintiffs that as of November 1, 1973, it was discontinuing the practice of showing a transportation credit as a separate line item. Defendant changed its pricing structure effective that date to F.O.B. refinery, and claimed that it reduced the base price of gasoline to reflect the fact that freight was no longer included in the price. Plaintiffs continued to use their own tank truck to transport the gasoline.

In December 1980 plaintiffs instituted this action claiming that the revised pricing structure put into effect by defendant in November 1973 raised the price of the gasoline beyond the maximum allowable price under the regulations then in effect.

The district court granted defendant's motion for judgment on the pleadings without reaching the merits of plaintiffs' claim. Plaintiffs argued that a six-year statute of limitations was applicable to this case. Relying on a number of this court's decisions, the district court found that even under a six-year statute of limitations, the action was time barred. It held that plaintiffs' cause of action, if any, accrued in November 1973 when defendant notified plaintiffs of the change in the pricing structure and began invoicing sales to plaintiffs under the new structure.

Plaintiffs contend that the district court erred in determining when their cause of action accrued. In their view, defendant's action in changing the pricing structure effective November 1, 1973 did not constitute a single isolated occurrence from which the limitations period should run. They claim that each monthly invoice which omitted the line item giving them a transportation credit constituted a separate violation which sustains a separate cause of action. This has been referred to as the continuing violation theory. *Western Mountain Oil, Inc. v. Gulf Oil Corp.*, 726 F.2d 765, 767 (Temp.Emer.Ct.App.1983).

■ Federal law determines when an action under the EPAA accrues. *Ashland Oil Co. of California v. Union Oil Co. of California*, 567 F.2d 984, 988 (Temp.Emer. Ct.App.1977), *cert. denied*, 435 U.S. 994, 98 S.Ct. 1644, 56 L.Ed.2d 83 (1978).

This court has repeatedly held that a cause of action under the price and allocation control regulations accrues at the time "when the defendant commits an act that injures the plaintiff." *Siegel Oil Co. v. Gulf Oil Corp.*, 701 F.2d 149, 153 (Temp. Emer.Ct.App.1983). *See also Northern Oil Co. v. Standard Oil Co. of California*, 761 F.2d 699, 706–707, 708 (Temp.Emer.Ct. App. March 18, 1985) (date of change in credit terms from consignment arrangement to fixed payment schedule); *Lerner v. Atlantic Richfield Co.*, 731 F.2d 898 (Temp.Emer.Ct.App.1984) (date of discontinuation of price differential between plaintiff and defendant's other customers); *Western Mountain Oil, Inc. v. Gulf Oil Corp.*, 726 F.2d at 767 (class of purchaser determination); *Fleetwing Corp. v. Mobil Oil Corp.*, 726 F.2d 768 (Temp.Emer.Ct. App.1983) (same); *Siegel Oil Co. v. Gulf Oil Corp.*, 701 F.2d at 153 (date of allegedly improper use of "substitute supplier rule"); *Shell Oil Co. v. Nelson Oil Co.*, 627 F.2d 228 (Temp.Emer.Ct.App.), *cert. denied*, 449 U.S. 1022, 101 S.Ct. 590, 66 L.Ed.2d 484 (1980) (date of change in credit terms from immediate cash credit for credit card receipts to several days lag time before credit entered); *Zenobi v. Exxon Corp.*, 577 F.Supp. 514 (D.Conn.1983) (date of discontinuance of month-end allowance). Furthermore, each of these cases (except *Zenobi*, which did not discuss the problem) expressly rejected the application of a continuing violation theory to its facts.

■ Although this court has never addressed the precise conduct here challenged—the discontinuation of a *transportation* credit—the fair import of the above cases dictates the result reached by the district court. There simply is no reason to depart from the clear rule that this court has established. Indeed, the *Shell Oil* and the *Northern Oil* cases would seem to be on all fours with this case. Each held that a cause of action for an alleged violation of 10 C.F.R. § 210.62 arising from a change in credit terms accrued on the date that the change in credit terms was first initiated. The challenged conduct here seems clearly

to be a "change of credit terms" within the meaning of those cases. *See Colorado Petroleum Products Co. v. Husky Oil Co.,* 646 F.2d 555 (Temp.Emer.Ct.App.1981) (discontinuation of "early payment discount" held to be change of credit terms within meaning of *Shell Oil*). The injury here occurred in November 1973, when the first invoice was submitted under the new price structure.

The judgment is affirmed.