**SIMMONS OIL CORPORATION (a/k/a David Christopher Corporation), Plaintiff–Appellant,**

v.

**TESORO PETROLEUM CORPORATION, Defendant–Appellee.**

No. 95–1433.

United States Court of Appeals, Federal Circuit.

June 13, 1996.

**1140**

James Baller, The Baller Law Group, P.C., Washington, D.C., argued for plaintiff-appellant. With him on the brief was Lana Meller.

J. Todd Shields, Fulbright & Jaworski, L.L.P., Houston, Texas, argued for defendant-appellee. With him on the brief was Charles E. Sullivan, Jr.

Before MICHEL, RADER, and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

Plaintiff Simmons Oil Corporation appeals from an order of the United States District Court for the District of New Mexico granting defendant Tesoro Petroleum Corporation's motion for summary judgment on statute of limitations grounds. We affirm.

## I

Between August 19, 1973, and January 28, 1981, the Department of Energy and its predecessor agency, the Federal Energy Administration, regulated the prices of crude oil and refined petroleum products. The regulations permitted refiners to establish entities known as "resellers," to purchase and sell refined products. The "reseller" entities were relieved from some aspects of the regulatory scheme, but were required to pass acquisition cost increases and decreases through to their customers on a shipment-by-shipment basis.

In the late 1970s, Simmons was engaged in the wholesale marketing of gasoline. In June of 1979, with gasoline prices rising rapidly, Simmons purchased 2.1 million gallons of gasoline from Tesoro Marketing Company, a "reseller" entity wholly owned by Tesoro Petroleum Corporation, at a price of $ 1.321 per gallon. Simmons made the purchase fully expecting the price of gasoline to continue rising. Soon after the purchase, however, gasoline prices began falling sharply. Ultimately, Simmons sold the gasoline for $ 0.75 per gallon, resulting in a loss of nearly $ 1.2 million. Because of the loss, Simmons was unable to make timely payment to Tesoro for the original 2.1 million gallon purchase. Jerry Simmons, the president of Simmons Oil Co., sought an extended payment schedule from Tesoro, and Tesoro agreed to extend the payment schedule. Simmons ultimately paid its account in full.

In 1990, according to the evidence submitted by Simmons in the summary judgment proceedings, Jerry Simmons met with Neil Chandi, a former Tesoro executive, regarding a crude oil purchase. In an effort to demonstrate his creditworthiness, Simmons reminded Chandi that Simmons had made full payment on the 1979 debt to Tesoro. At that point, according to Simmons, Chandi stated: "You really don't know what they did to you, do you?" Thereafter, Chandi allegedly explained to Simmons that, after the sale to Simmons, Tesoro had renegotiated a lower acquisition price with its suppliers but had failed to disclose or pass on the price reduction to Simmons.

Simmons filed suit against Tesoro in 1994 claiming that Tesoro, operating through its "reseller" entity, had violated the DOE regulations applicable at the time of the transaction by failing to disclose its renegotiated costs and failing to pass the lower acquisition costs on to Simmons. As an affirmative defense, Tesoro invoked the applicable four-year New Mexico statute of limitations. Simmons countered by claiming that the statute of limitations should be tolled for the period between 1979 and 1990 because Tesoro had fraudulently concealed the facts that gave rise to Simmons' cause of action. Tesoro moved for summary judgment on the statute of limitations defense, and the district court granted the motion. This appeal followed.

## II

As an initial matter, Tesoro contends that this court does not have subject matter

jurisdiction to hear this appeal. We reject that contention.

On April 29, 1993, the Temporary Emergency Court of Appeals (TECA) was dissolved and all matters within that court's jurisdiction were transferred to this court. Federal Courts Administration Act of 1992, Pub.L. No. 102–572, 106 Stat. 4506 (1992). This court subsequently adopted as precedent the body of law developed by TECA, including decisions on the issue of jurisdiction. *Texas Am. Oil Corp. v. United States Dep't of Energy,* 44 F.3d 1557, 1561 (Fed.Cir. 1995) (in banc). In analyzing the jurisdictional question, we therefore consider whether TECA would have assumed jurisdiction over this appeal.

For TECA to have jurisdiction, two threshold requirements had to be met. First, resolution of the litigation must have required application or interpretation of the Economic Stabilization Act of 1970(ESA), Pub.L. No. 91–379, 84 Stat. 799 (1970), the Emergency Petroleum Allocation Act (EPAA), Pub.L. No. 93–159, 87 Stat. 627 (1973), or their implementing regulations. Second, the ESA/EPAA issue must have been adjudicated in the district court. *Texas Am. Oil Corp.,* 44 F.3d at 1563; *In re Dep't of Energy Stripper Well Exemption Litig.,* 945 F.2d 1575, 1578 (Temp.Emer.Ct. App.1991).

The litigation in this appeal involved an alleged overcharge in violation of the EPAA and its implementing regulations. Our jurisdictional inquiry therefore turns on the second portion of the analysis—whether the EPAA claim was adjudicated when the district court dismissed the claim as barred by the statute of limitations.

In a series of cases, TECA held that its jurisdiction extended not only to those ESA or EPAA issues decided on the merits, but also to "those subsidiary, procedural and threshold questions—such as mootness, standing and ripeness—that are incidental to questions that are within our jurisdiction, because the power to do so is normal and necessary to the functioning of any appellate court." *MGPC, Inc. v. Dep't of Energy,* 673 F.2d 1277, 1281 (Temp.Emer.Ct.App.1982). TECA expounded on that rule in *Quincy Oil,*

*Inc. v. Federal Energy Admin.,* 620 F.2d 890, 893 (Temp.Emer.Ct.App.1980), in which the court explained that a threshold issue such as mootness is within TECA's jurisdiction because "[m]ootness ... is not an 'issue' that arises independently of the substantive claim or cause of action being challenged as moot. Rather, the doctrine of mootness questions the continuing vitality of a substantive claim or cause of action under adjudication and has no life apart from that substantive claim." *Id.* at 893.

A statute of limitations defense, which similarly challenges the vitality of a substantive claim and has no life apart from it, was also deemed to fall within TECA's jurisdiction if the underlying claim was based on the ESA or the EPAA. In *Placid Oil Co. v. Ashland Oil, Inc.,* 792 F.2d 1127, 1133 (Temp.Emer.Ct.App.1986), TECA considered whether it had jurisdiction over a set of claims that were dismissed without prejudice by the trial court. As to one of the claims, the defendant had raised a statute of limitations defense and argued that it was entitled to summary judgment. The court of appeals assumed jurisdiction over the appeal and decided the statute of limitations question. 792 F.2d at 1134. In addressing the jurisdictional issue, the court stated (*id.* at 1132) (emphasis added):

> Placid argues that no EPAA issue is presented to us, because a discretionary dismissal of the action, without prejudice, and *questions as to the statute of limitations,* and the denial of summary judgment because there is conflicting evidence as to the sufficiency of Placid's certifications, are not such issues. We do not agree.
>
> As we have shown, Placid's action certainly arises under EPAA, and the questions in the case going to the merits are certainly EPAA questions. Placid could not recover without proving compliance with EPAA and the regulations. *Here the trial court's order terminated the litigation. To that extent, it is a decision of the EPAA questions.*

That analysis is directly applicable here. Simmons' underlying claims rest on the EPAA, and the district court's order on the statute of limitations issue terminated the

litigation, thus disposing of the EPAA claims in the case. We therefore agree with Simmons that this court has jurisdiction to hear this appeal.

### III

On the merits, Simmons argues that the district court erred in granting summary judgment because (1) in the summary judgment proceedings, Simmons raised disputed questions of material fact with respect to the statute of limitations issue; and (2) the district court ruled on Tesoro's summary judgment motion before Simmons could complete its discovery. We find no merit in either argument.

### A

The parties agree that New Mexico's four-year statute of limitations governs this case. The four-year period was obviously exceeded, as Simmons' cause of action accrued in 1979 and this suit was not filed until 1994. The parties also agree that the federal common law on fraudulent concealment applies to the central issue in this case: whether the four-year statute of limitations was tolled because of fraudulent concealment by Tesoro during the period from 1979 to 1990. The parties debate whether, in applying the federal common law of fraudulent concealment, this court should look to decisions of TECA or decisions of the Tenth Circuit. We think it unnecessary to answer that question, however, as we find the governing principles of federal law to require affirmance of the district court's order regardless of which appellate court's precedents are consulted.

The leading case setting forth the principle of fraudulent concealment under federal law is *Bailey v. Glover*, 21 Wall. 342, 88 U.S. 342, 22 L.Ed. 636 (1874). The Supreme Court there adopted the view that, assuming due diligence on the part of the plaintiff, the statute of limitations is tolled when the misconduct in question "has been concealed, or is of such character as to conceal itself." 88 U.S. at 349–50. In *Ashland Oil Co. v. Union Oil Co.*, 567 F.2d 984, 988 (Temp.Emer.Ct.App.1977), *cert. denied*, 435 U.S. 994, 98 S.Ct. 1644, 56 L.Ed.2d 83 (1978),

TECA applied that principle to an overcharge case arising under the ESA:

> Where acts causing injury are fraudulently concealed from the injured party or where fraud furnishing the basis of an action is of such nature as to conceal itself, a statute of limitations is tolled until the injured party discovers, or with due diligence could have discovered, the injury.... To support the result contended for plaintiff would have to establish either that the defendant fraudulently concealed the conduct forming the basis of the claim or that the defendant's conduct by reason of its fraudulent nature was inherently self-concealing.

In rejecting the tolling claim before it, the court in *Ashland* held that the defendant's failure to provide information to the plaintiff from which the plaintiff could determine that it had a possible claim against the defendant was not enough to constitute fraudulent concealment. The court wrote: "The fact that FEA pricing regulations involve complicated accounting processes and that price information resulting from those processes is not 'self-revealing' is not enough to sustain a claim of fraudulent concealment." *Id.*

Twelve years later, TECA revisited the question whether the doctrine of fraudulent concealment could be invoked in an overcharge case to toll the statute of limitations. Again, the court held that the defendant's failure to reveal facts relating to its pricing methodology did not constitute fraudulent concealment. The court reiterated the principle of *Ashland*, that "the complex nature of price control regulations does not justify tolling the statute of limitations period on the basis of fraudulent concealment." *Atchison, Topeka & Santa Fe Ry. v. Chevron U.S.A.*, 896 F.2d 561 (Temp.Emer.Ct.App.1989). The court then added that in order to prevail on a claim of fraudulent concealment, the plaintiff would have to "produce sufficient evidence from which a jury could conclude both that [defendant] actively concealed its wrongdoing, and that plaintiff exercised due diligence in uncovering the wrongdoing." *Id.* at 561–62.

The *Ashland* and *Santa Fe* cases dispose of Simmons' fraudulent concealment argument. Even if all of Simmons' allega-

tions regarding the 1979 transactions are true, *Ashland* makes clear that Tesoro's failure to reveal that it obtained a lower price for the gasoline it sold to Simmons did not constitute fraudulent concealment. *Santa Fe*, moreover, makes clear that in order to establish fraudulent concealment in this setting, Simmons would have to show that Tesoro "actively concealed its wrongdoing." 896 F.2d at 561. While Simmons characterizes Tesoro's failure to pass on the benefits of its renegotiated price as "fraudulent" and "inherently self-concealing," Simmons' theory of fraud is contrary to well-established principles. As the *Ashland Oil* case makes clear, a mere failure to come forward with facts that would provide the plaintiff with a basis for suit does not constitute fraudulent concealment. 567 F.2d at 988. Decisions of other courts of appeals, including the Tenth Circuit, are to the same effect. *See, e.g., Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 218 (4th Cir.1987) (defendant's failure to admit that reason for low coal price was illegal antitrust activity did not constitute fraudulent concealment; fraudulent concealment claim cannot rest on "no more than an alleged failure to own up to illegal conduct"); *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1415 (9th Cir.1987) (silence or passive failure to disclose facts that would alert plaintiff to his cause of action do not constitute fraudulent concealment); *King & King Enters. v. Champlin Petroleum Co.*, 657 F.2d 1147, 1155 (10th Cir.1981), *cert. denied*, 454 U.S. 1164, 102 S.Ct. 1038, 71 L.Ed.2d 320 (1982), quoting *King & King Enters. v. Champlin Petroleum Co.*, 446 F.Supp. 906, 911 (E.D.Okla.1978) ("in the absence of a fiduciary duty between the parties, mere failure to disclose the existence of a cause of action does not constitute fraudulent concealment"). Simmons has not identified any statutory or regulatory duty that Tesoro owed to Simmons to volunteer information regarding its purchases. There is therefore nothing in Simmons' allegations regarding the initial transaction that could serve as a basis for finding fraudulent concealment on Tesoro's part.

Simmons argues that Tesoro's act of agreeing to a relaxed repayment schedule, while not revealing the reduced price it had obtained for the gasoline it sold to Simmons, constituted fraudulent concealment even if the original transaction did not. But that argument must fail, because there was nothing about the deferred payment agreement that was any more fraudulent in nature than the original sale. So far as Simmons' evidence reveals, Tesoro did not make any misrepresentation at that time as to the price Tesoro had paid for the gasoline, nor does Simmons point to anything else Tesoro did that had the effect of deflecting any inquiry by Simmons into the question of the legitimacy of the original transaction.

■ Simmons contends that the fraudulent concealment occurred when Tesoro negotiated the deferred payment schedule "on the false pretense that Simmons owed the full contract price." But agreeing to accept deferred payment on a "false pretense" as to the lawfulness of the original transaction (*i.e.*, without revealing all the facts surrounding that transaction) is quite different from inducing action (and concealing misconduct) through false representations. The same "false pretense" argument could be made— equally unpersuasively—if Tesoro had never extended Simmons' payment schedule, but had merely accepted Simmons' timely payments on the debt without revealing the facts regarding Tesoro's renegotiated acquisition costs. While Simmons' evidence may show that Tesoro was not forthcoming in its dealings with Simmons, a party's failure to reveal its own wrongdoing during the course of dealings with another does not, *ipso facto*, constitute fraudulent concealment. The district court therefore properly held that the statute of limitations cannot be tolled on that ground. Because we uphold the district court's ruling with respect to fraudulent concealment, we have no occasion to address the district court's alternative ruling that Simmons failed to raise a triable issue of fact as to whether, with due diligence, it could have discovered the wrongful overcharge.

B

■ Simmons also contends that the district court abused its discretion in denying Simmons' provisional motion, pursuant to

Fed.R.Civ.P. 56(f), for a continuance to conduct additional discovery. A trial court's denial of a motion for further discovery under Rule 56(f) will not be deemed an abuse of discretion if "there is no reason to believe that it will lead to the denial of a pending motion for summary judgment." *Pacific Service Stations Co. v. Mobil Oil Corp.*, 689 F.2d 1055, 1066 (Temp.Emer.Ct.App.1982).

Tesoro's motion for summary judgment was based entirely on its statute of limitations defense. In its motion seeking further discovery before the disposition of Tesoro's summary judgment motion, Simmons merely asserted that its proposed discovery "may well yield information that would be highly relevant to the issues posed by Tesoro's motion for summary judgment." The affidavit that accompanied the Rule 56(f) motion was not much more specific; it asserted that Simmons needed additional discovery to learn more about the identity of Tesoro's supplier or suppliers for the 2.1 million gallon gasoline purchase, whether Tesoro benefited from renegotiating its acquisition costs, whether any disclosure Tesoro made to the Department of Energy would "shed further light on Tesoro's conduct in this case," and whether Tesoro "threatened, offered inducements to, or withheld information from" the persons from whom it secured the affidavits Tesoro filed in support of its summary judgment motion.

Simmons' motion and affidavit focus principally on the merits of Simmons' claim rather than on the tolling issue. They are devoid of any suggestion of how the additional discovery Simmons sought would relate to the issue of fraudulent concealment. In particular, the identity of the suppliers would appear to be irrelevant to the fraudulent concealment issue; the nature of any disclosures Tesoro may have made to the Department of Energy would not bear on any claim of concealment from Simmons, except to the extent that Simmons may have relied on some representation that Tesoro made to the government, which Simmons does not contend that it did; and any impropriety in the methods Tesoro used to obtain affidavits would bear

only on the underlying question of liability, not on the question of what was and was not revealed to Simmons at the time of the original transaction and afterwards.

■■■ In moving for relief under Rule 56(f), a party must demonstrate specifically "how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Willmar Poultry Co. v. Morton–Norwich Prods., Inc.*, 520 F.2d 289, 297 (8th Cir.1975), *cert. denied*, 424 U.S. 915, 96 S.Ct. 1116, 47 L.Ed.2d 320 (1976). The party "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." *Securities & Exchange Comm'n v. Spence & Green Chem. Co.*, 612 F.2d 896, 901 (5th Cir.1980), *cert. denied*, 449 U.S. 1082, 101 S.Ct. 866, 66 L.Ed.2d 806 (1981). The rule does not require clairvoyance on the part of the moving party, *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1292 (5th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 312, 130 L.Ed.2d 275 (1994), but the movant is "required to state with some precision the materials he hope[s] to obtain with further discovery, and exactly how he expect[s] those materials would help him in opposing summary judgment." *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1443 (5th Cir. 1993). It is not enough simply to assert, à la Wilkins Micawber, that "something will turn up."

In view of these principles, the district court was correct that Simmons failed to make a persuasive showing that the requested discovery could have "resurrected" its claim. *Fleetwing Corp. v. Mobil Oil Corp.*, 726 F.2d 768, 771 (Temp.Emer.Ct.App.1983). Moreover, the district court did not act so quickly on the summary judgment motion that it can be characterized as having engaged in a "rush to judgment," denying Simmons any reasonable opportunity for discovery. *See Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769

F.2d 919, 927 (2d Cir.1985). This case had been pending for almost a year by the time the district court granted Tesoro's summary judgment motion and denied Simmons' motion for further discovery. Under these circumstances, we conclude that the district court did not abuse its discretion in denying Simmons' motion.

*AFFIRMED.*