304 F.3d 1349
 BRUBAKER AMUSEMENT CO., INC., Pavlic Vending Service, Inc., Automated Services, Inc., B&G Enterprises, Ltd., A-1 Cigarette Vending, Inc.,
A&B Cigarette Service, Inc., A&H Vending Co., Inc., A. Van Brackel & Sons, Inc., Ace Vending Company, Adams & Adams, Inc., Advanced Vending Co., Advanced Cigarette Service, Aero Merchandising Corporation, Al Faini Vending, Inc., All Star Amusements, Alliance Vending, Inc., Anders Vending Service, Anderson Games Co., Inc., Apple Vending Co., Inc., Atlas Vending, Automatic Music & Vending Corporation, Automatic Refreshment Service, Inc., Automatic Vending Service Corporation, Automatic Merchandising Co., James A. Lewis d/b/a B&H Vendors, Ballard Vendors, Becker Enterprises, Big State Vending Co., Inc., Blue Chip Vending Co., Bob's Music & Cigarette Vending, Inc., C&N Sales Co., Inc., Chuck's Cigarette & Vending, Cigarette Vending Service of Dallas, Inc., Class A Vending, Coin-Operated Vending Co., Colonial Vending Company, Comprehensive Vending Sales, Ct's Vending, Inc., Dean Superior Vending Co., D.C. Vending Company, Inc., Dicarlo Vending Co., Dollar, Vending Company, Edward J. Zarick, Inc. (doing business as All-Star Vending), Ellis Amusement, Inc., Empire Smokes, Inc., Fred Totera Vending, Inc., General Vending Services, Inc., Happy House Amusements, Hazelwood Corporation, Hillman Vending Co., Inc., Hughes Music Company I.T. Vending & Novelty Corporation, Isle Vending, Inc., J&V Coin Machine Co., J.S. Vending, Inc., Jre, Inc. (doing business as FM Vending), K&R Services, Inc., Kay-Cee Vending, Inc., Kenton Novelty Co., Inc., Larry's Amusement & Vending Co., Lowell Vending Co., Inc., M.J. White, Inc., Mannie's Vending, Mark V. Hanks Cigarette Vending, Melo-Tone Vending, Inc., Melody Vending Service, Mendota Valley Amusement, Inc., Miami Valley Automated Associated, Inc., Miller Amusement & Vending Co., Modern Cigarette Service, N.W. Services, Inc., Newman Amusement, Inc., Newport Music Co., Inc., Northern Amusement, Inc., Ohio Vending Machine, Inc., Owen Music and Games, Paramount Vending, Inc., Penn Triple S t/a Penn Vending Company, Piedmont Bottling & Vending Co., Pioneer Vending, Inc., Pride Vending, Inc., PSI Vending II, Quality Entertainment Company, Reliable Vending Service, Inc., Rendezvous Music & Vending, Roy George Music & Vending Corporation, Royal Vending Company, Russel-Hall Amusements & Vending, Shaffer Services, Inc., Stansfield Vending, Inc., State Music Distributors, Inc., Suburban Vending, Superior Vending Corporation, T.D. Rowe Corporation, Total Service Corporation, VGI Vending, Inc., Video Distributors, Inc., W.L. Perry Music Co., Inc., Wayne Vending Corporation, Western Automatic Music, Inc., Williams Enterprises, Inc., Krueger Vending Services, Brian Suemnicht (doing business as Home Service Vending Company), and Anderson Vending & Coffee Service, Plaintiffs-Appellants,
v.
UNITED STATES, Defendant-Appellee.
 No. 01-5070.
 No. 01-5080.
 No. 01-5083.
 No. 01-5084.
 No. 01-5120.
 United States Court of Appeals, Federal Circuit.
 Decided July 15, 2002.
 Rehearing Denied August 14, 2002.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED Douglas B. McFadden, McFadden & Shoreman, P.C., of Washington, DC, argued for plaintiffs-appellants. With him on the brief was John M. Shoreman.
 Mark A. Melnick, Assistant Director, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Stuart E. Schiffer, Acting Assistant Attorney General; and David M. Cohen, Director. Of counsel on the brief were Katherine M. Kelly, Trial Attorney, Department of Justice; Michael M. Landa, Acting Chief Counsel; and Karen E. Schifter, Associate Chief Counsel, Food and Drug Administration, Rockville, MA.
 John D. Echeverria, Environmental Policy Project, Georgetown University Law Center, of Washington, DC, for amici curiae The American Cancer Society, et al.
 Before MICHEL, BRYSON, and GAJARSA, Circuit Judges.
 Opinion for the court filed by Circuit Judge GAJARSA. Opinion filed by Circuit Judge MICHEL, concurring.
 GAJARSA, Circuit Judge.
 
 
 1
 This is a consolidated appeal of three cases, A-1 Cigarette Vending Inc., v. United States, No. 01-5120, B&G Enterprises, Ltd., v. United States, No. 01-5080, and Brubaker Amusement Co. v. United States, Nos. 01-5070, -5083, and -5084. The appellants, owners and operators of tobacco vending machine businesses, appeal the dismissal of their complaints by the United States Court of Federal Claims. They seek just compensation for the alleged temporary regulatory taking of their property, their vending machine placement contracts, by the Food and Drug Administration ("FDA") tobacco regulations. They allege that their property was taken in violation of the Fifth Amendment of the United States Constitution. Because we agree with the trial court that the challenged tobacco regulations were never in effect and enforced, we affirm. In so doing, we note that the Supreme Court's recent pronouncement on the availability of temporary takings claims does not affect our conclusion, as the absence of government enforcement alone sufficiently resolves this appeal. See Tahoe Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 535 U.S. 302, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002).
 
 
 BACKGROUND
 
 
 2
 In 1995, the FDA asserted jurisdiction to regulate tobacco products under its authorizing statute, the Food, Drug and Cosmetic Act, 21 U.S.C. § 301 et seq. The FDA proposed regulations concerning tobacco products on August 11, 1995, and they were published in final form on August 28, 1996, after notice and comment. Regulations Restricting the Sale and Distribution of Cigarettes and Smokeless Tobacco to Protect Children and Adolescents, 61 Fed. Reg. 44,396 (Aug. 28, 1996) (codified at 21 C.F.R. pts. 801, 803, 804, 807, 820, and 897 (1997)). Among other things, the issued regulations banned the sale of cigarettes and smokeless tobacco from vending machines in venues accessible to people under the age of 18. The term "the vending machine regulations" will be hereinafter used to identify the segment of the regulations that restricted the sale of tobacco products from vending machines to locations where no one under the age of 18 was present or allowed to enter at any time, namely those codified at 21 C.F.R. § 897.16(c). The tobacco regulations were to become effective at different times, with the vending machine regulations set to become effective on August 28, 1997. All of the regulations were challenged in the United States District Court for the Middle District of North Carolina as exceeding the legal and regulatory authority of the FDA. Coyne Beahm, Inc. v. FDA, 966 F.Supp. 1374 (M.D.N.C.1997). On April 25, 1997, the district court ordered, among other things, that the FDA stay implementation of those regulations set to take effect on August 28, 1997, which included the vending machine regulations, pending further orders by the court. Id. at 1400-01. On March 21, 2000, the Supreme Court decided FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000), holding generally that the FDA had no authority to regulate tobacco products and, more specifically, that the FDA was statutorily prohibited from doing so. The regulations were therefore invalid.
 
 
 3
 On December 15, 1997, the appellants in this case filed a complaint with the Court of Federal Claims ("the trial court") claiming that the tobacco vending machine regulations had effected a categorical taking of their property without just compensation because the contracts for the placement of their cigarette vending machines were terminated as a result of the regulations. The trial court stayed the action pending the outcome of Brown & Williamson. Subsequent to the Supreme Court's decision, the appellants amended their complaint to allege a temporary taking and a taking based on the states' implementation of the vending machine regulations as agents of the federal government in order to obtain grants from the Department of Health and Human Services. The latter argument, premised on the agency theory, was rejected in an interlocutory appeal brought in one of the presently consolidated cases, B&G Enterprises, Ltd. v. United States, 220 F.3d 1318 (Fed.Cir.2000), cert. denied, 531 U.S. 1144, 121 S.Ct. 1079, 148 L.Ed.2d 956 (2001) ("B&G Enterprises I"), because this court found that there was no manifestation of an intent to create an agency relationship by either the federal government or the State of California. Id. at 1323. The claim based on the agency argument was eventually dismissed voluntarily by the plaintiffs in the remaining two cases, leaving only the temporary takings claims.
 
 
 4
 With only the temporary takings claim remaining, the plaintiffs moved to conduct discovery to ascertain whether or not the government had specifically enforced the regulations. The trial court denied plaintiffs' motions to conduct discovery and granted the government's motion to dismiss, which was premised on the Supreme Court's decision in Brown & Williamson. The Supreme Court specifically held that the FDA does not have regulatory authority over tobacco products. Brown & Williamson, 529 U.S. at 133, 120 S.Ct. 1291. The government argued that this lack of authority to regulate tobacco products precludes recovery because a takings claim cannot stand when there was no authority for the act. The government also argued that the FDA never enforced the vending machine regulations, and therefore there was no temporary taking. Finally, the government argued, there was no temporary taking as a matter of substantive law.
 
 
 5
 Three cases were joined in this consolidated appeal: A-1 Cigarette Vending, Inc. v. United States, No. 01-5120, B&G Enterprises, Ltd., v. United States, No. 01-5080 ("B&G Enterprises II"), and Brubaker Amusement Co. v. United States, Nos. 01-5070, -5083, and -5084 ("Brubaker Amusement"). In A-1 Cigarette v. United States, the trial court addressed all three of the arguments presented by the government, namely the lack of authority, the lack of enforcement, and the absence of a taking as a matter of substantive law. 49 Fed.Cl. 345 (2001). It concluded that the FDA did not have statutory authorization to regulate tobacco products, and that therefore there could be no compensable taking because in order to establish a regulatory taking by the government, the agency implementing the regulation must have had statutory authority to issue the regulation. Id. at 351, 355. The trial court dismissed the complaint on the lack of authority to issue the regulations. Id. at 355. The trial court also addressed the government's second argument and determined that there could be no takings claim because the vending machine regulations were never enforced. Id. at 360. The trial court treated the motion to dismiss as a motion for summary judgment, pursuant to Rule of the Court of Federal Claims ("RCFC") 12(c),[1] id. at 357, and granted summary judgment to the government based upon the absence of enforcement, id. at 360. The trial court, however, declined to decide the issue as to whether or not there could be a taking as a matter of law, but noted that there probably could not be a taking in this case. Id. at 361. In B&G Enterprises II, the trial court, also treating the government's motion to dismiss as one for summary judgment, dismissed the complaint because the regulations were never enforced. 48 Fed.Cl. 866, 866 n. 2, 869 (2001). It did not address the other two arguments. In Brubaker Amusement, the trial court dismissed the complaint because, as there was no statutory authority for the regulations, the FDA's actions could not create a compensable takings claim. No. 98-511C, slip op. at 6 (Ct.Fed. Cl. Jan. 12, 2001). It declined to rule on the government's alternative argument of non-enforcement. Id. at 7. For purposes of this appeal, unless otherwise stated, reference to the trial court's opinion is to the opinion in the A-1 Cigarette case, which discussed all of the submitted theories for negating the alleged regulatory taking.
 
 
 6
 We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1295(a)(3). We agree with the trial court that the regulations were never enforced by the FDA and therefore no temporary taking could result as a matter of law. Because we resolve the matter before us on that issue, we decline to address the other remaining issues.
 
 
 STANDARD OF REVIEW
 
 
 7
 This court reviews a dismissal for failure to state a claim without deference. Highland Falls-Fort Montgomery Cent. Sch. Dist. v. United States, 48 F.3d 1166, 1170 (Fed.Cir.1995). A plaintiff fails to state a claim upon which relief may be granted if the plaintiff cannot assert a set of facts that would support its claim. Id. at 1169. In reviewing the Court of Federal Claims' grant of such a motion, this court assumes that all well-pled factual allegations are true and resolves all reasonable inferences in favor of the nonmovant. Id. at 1169-70.
 
 
 8
 Pursuant to RCFC 12(c), the trial court may convert a motion to dismiss into a motion for summary judgment under RCFC 56 if it relies on evidence outside the pleadings. RCFC 12(c). This court reviews the trial court's grant of summary judgment de novo, construing the facts in the light most favorable to the non-moving party. Cienega Gardens v. United States, 265 F.3d 1237, 1244 (Fed.Cir.2001). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56; see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
 
 
 9
 The standard of review on discovery matters is whether an abuse of discretion occurred. Keebler Co. v. Murray Bakery Prods., 866 F.2d 1386, 1388 n. 1, 9 USPQ2d 1736, 1738 n. 1 (Fed.Cir.1989).
 
 
 DISCUSSION
 
 
 10
 Appellants assert that the tobacco regulations took their property, the vending machine contracts, in violation of the Fifth Amendment of the United States Constitution. In particular, appellants argue that the property was taken temporarily between August 11, 1995, the date of the proposed regulations, and March 21, 2000, the date of the Brown & Williamson decision of the Supreme Court. Appellants raise two arguments with respect to enforcement of the vending machine regulations. First they assert that there is evidence showing enforcement of the regulations sufficient to raise a triable issue of fact. Second they assert that even if they have not presented sufficient evidence to support a triable issue of fact, that failure is due to the trial court's refusal to allow discovery on this point.
 
 
 I. Evidence of Enforcement
 
 
 11
 The Fifth Amendment provides in relevant part: "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V, cl. 4. The Supreme Court has stated that "[c]ontract rights are a form of property and as such may be taken for a public purpose provided that just compensation is paid." United States Trust Co. of N.Y. v. New Jersey, 431 U.S. 1, 19 n. 16, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977). However, governmental interference with contractual rights does not necessarily constitute a taking of property. B&G Enterprises I, 220 F.3d at 1323; Connolly v. Pension Benefit Guar. Corp., 475 U.S. 211, 224, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986). Therefore, as this court stated in B&G Enterprises I, for purposes of this appeal, we accept but do not decide that the vending machine contracts may constitute "property," but we conclude that even if they are property rights, a taking did not occur. 220 F.3d at 1323.
 
 
 12
 The Supreme Court has repeatedly emphasized a distinction between takings claims that arise in the context of facial challenges and those that arise in the context of challenges to the application of a statute or regulation to a particular piece of property. As the Court stated in Keystone Bituminous Coal Ass'n v. DeBenedictis, "we have recognized an important distinction between a claim that the mere enactment of a statute constitutes a taking and a claim that the particular impact of government action on a specific piece of property requires the payment of just compensation." 480 U.S. 470, 494, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987). The former constitutes a takings claim based on a facial challenge, while the latter constitutes a takings claims based on an "as-applied" challenge. Cf. id. at 494-95, 107 S.Ct. 1232. Two important consequences derive from this distinction: first, plaintiffs pursuing a facial challenge must show that the provision is unconstitutional in all its applications, and second, plaintiffs pursuing an as-applied challenge must show that the provision was applied to them in such a way that deprived them of their property.
 
 
 13
 A review of takings jurisprudence leads to the conclusion that where an as-applied challenge is not ripe, a facial challenge may still be present. In the context of facial challenges, the "mere enactment" of legislation may be sufficient to constitute a taking claim. See Suitum v. Tahoe Reg'l Planning Agency, 520 U.S. 725, 736 n. 10, 117 S.Ct. 1659, 137 L.Ed.2d 980 (1997) ("Such `facial' challenges to regulation are generally ripe the moment the challenged regulation or ordinance is passed, but face an `uphill battle'...."); Keystone, 480 U.S. at 495, 107 S.Ct. 1232; Hodel v. Virginia Surface Mining & Reclamation Ass'n, 452 U.S. 264, 295, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981); Agins v. City of Tiburon, 447 U.S. 255, 260, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980).
 
 
 14
 Unlike the context of a facial challenge, where mere enactment is sufficient to make a claim ripe, the Supreme Court has not held that it is sufficient in the context of an as-applied challenge. See Danforth v. United States, 308 U.S. 271, 284, 286, 60 S.Ct. 231, 84 L.Ed. 240 (1939) (holding, in the context of a physical taking, that the mere enactment of legislation which authorizes the condemnation of property cannot be a taking because it can be repealed or modified or the appropriations might fail). This stems naturally from the requirement of "application" to a particular piece of property in as-applied challenges. A statute or regulation cannot be applied to a particular piece of property until it goes into effect. It is only when the rule has gone into effect that a plaintiff may have a ripe as-applied challenge. This may occur on the same day as enactment. In that case, however, it is the fact that the rule has gone into effect, and not the fact that it has been enacted, that makes it ripe on that day. Furthermore, as the Supreme Court has held, even the fact that a rule has gone into effect may not be sufficient to make ripe an as-applied challenge. See Williamson County Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 187, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). This is seen most apparently where the rule is discretionary and the Court has required that a final decision adverse to the property holder is required to create a ripe claim. Id.
 
 
 15
 The Court in Williamson County explained that an as-applied challenge in the context of discretionary regulations is not ripe until the decision-making body has made a final decision with respect to how the regulation will affect the particular property in question. 473 U.S. at 187, 105 S.Ct. 3108; see also Gerlach Livestock Co. v. United States, 111 Ct.Cl. 1, 76 F.Supp. 87, 97 (1948) ("So long as it is conjectural whether or not defendant will actually take plaintiff's property, a taking has not occurred, but when conjecture ripens into a definitely asserted purpose and steps are taken to carry out that purpose, the taking may be said to have occurred."); cf. Franconia Assocs. v. United States, ___ U.S. ___, 122 S.Ct. 1993, 2002, 153 L.Ed.2d 132 (2002). However, where a discretionary decision has not been sought, a facial challenge is still available. See Yee v. City of Escondido, 503 U.S. 519, 534, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992).
 
 
 16
 Regulatory takings claims based on as-applied challenges have, in the past, focused on discretionary statutes or regulations, where the governmental authority has discretion to decide to whose property the regulation will apply. In those contexts, as the Supreme Court in Williamson County explained, the taking only occurs when the government makes a final decision with respect to the application of the rule to the particular property in question. Williamson County, 473 U.S. at 187, 105 S.Ct. 3108. In some cases, like this one, the situation is different in that the regulation is not discretionary. See Cienega Gardens v. United States, 265 F.3d 1237, 1246 (Fed.Cir.2001) ("Other cases cited by the Owners also conclude that where an agency has no discretion in the application of a contested regulation, an aggrieved party does not need to obtain a final decision from the agency determining the scope of the regulation."); Greenbrier v. United States, 193 F.3d 1348, 1359 (Fed.Cir.1999) ("The failure to follow all applicable administrative procedures can only be excused in the limited circumstance in which the administrative entity has no discretion regarding the regulation's applicability and its only option is enforcement.... [I]n such circumstances, no uncertainty remains regarding the impact of the regulation....") (citations omitted).
 
 
 17
 Where a rule is non-discretionary there is no doubt as to whose property it applies; here the rules applied to all tobacco vending machines. That does not mean, however, that to succeed on an as-applied challenge, the property owner need not show that the regulation has been applied to his property. It simply means that in most cases this showing will not be onerous because once the rule is in effect it has been "applied" to that particular property. For a non-discretionary rule, a "final decision," required by Williamson County for an as-applied challenge, is made when the rule goes into effect.
 
 
 18
 In sum, facial challenges to statutes or regulations are ripe as of the enactment of the rule, but, as the Court stated in Keystone, are particularly hard to prove. As-applied challenges require a showing of application to the particular property in question. This requires that the decision-making body make a final decision as to the application of the rule to the particular piece of property, as the Supreme Court stated in Williamson County. For discretionary rules, this occurs after the property owner has sought and been denied a favorable decision from the governing body. For non-discretionary rules, application occurs once the rule goes into effect, whether that be on the date of enactment or some later date.[2] This later date may be statutory or regulatory, i.e. articulated in a rule, or it may be pragmatic, for example in a case where the rule simply cannot be applied until a particular time.
 
 
 19
 In this case, we are presented with an as-applied challenge to federal regulations. Plaintiffs continually assert that their particular contracts were taken as a result of enforcement of the FDA regulations. They have never asserted a broader, facial challenge to the regulations, and even if they had, such a challenge would be moot in the aftermath of Brown & Williamson. Therefore, our takings analysis in this case must conform to the requirements for proving an as-applied taking.
 
 
 20
 Given that this case presents an as-applied challenge, the mere enactment of the regulations is not sufficient to create a taking. As we have already explained, mere enactment is sufficient only in the context of facial challenges. This conclusion is not affected by the fact that this regulation was not discretionary, as mere enactment is not sufficient for as-applied challenges regardless of whether or not they are discretionary. In this case, the FDA issued the final regulations on August 28, 1996, but the regulations were not scheduled to become effective until August 28, 1997. Therefore, as the trial court correctly determined, the earliest date that a taking could have commenced was August 28, 1997.
 
 
 21
 As this challenge is one of application, the next question is: When was the rule applied to the property at issue? The regulation at issue was not discretionary, and therefore, under normal circumstances would have been ripe for an as-applied takings challenge as of its effective date. However, this is not the typical case where "application" is easily proven, because in this case there is a serious question as to whether this self-executing, non-discretionary rule was "applied" to the particular piece of property, or to any vending machines whatsoever. Therefore, the essential question in this case is when, if ever, were the vending machine regulations in effect or "applied."
 
 
 22
 While the regulation was to go into effect on August 28, 1997, the appellants cannot assert a taking as of that date because on April 25, 1997, the United States District Court for the Middle District of North Carolina issued an injunction preventing the FDA from enforcing the regulations. Coyne Beahm, 966 F.Supp. at 1400-01. The district court's order encompassed the vending machine regulations when it stated: "IT IS FURTHER ORDERED that the Food and Drug Administration shall not implement any of the additional Regulations set for implementation on August 28, 1997, pending further orders by the court." Id. We agree with the Court of Federal Claims that this order prevented the FDA from enforcing the regulations on a nationwide basis. The order's plain terms do not limit the injunction to a particular locale, and as the challenge to the regulation in Coyne Beahm was one of facial validity, and not one of application, there is no reason to read the order more narrowly. This stay essentially made the regulations unenforceable as of the date they were to take effect. Therefore, for purposes of the takings analysis, they were regulations which had not yet taken effect, and no taking could occur.
 
 
 23
 That the nationwide stay made the regulations ineffective, however, is a presumption that can be rebutted by appellants if they can demonstrate that after the date the regulations technically went into effect, August 28, 1997, the FDA actually took steps to enforce them, in violation of the court order. Hence, we are left with the subsequent question: Have the appellants created an issue of material fact as to whether the regulations were ever enforced so that they were "in effect"? The summary judgment would need to be reversed if the appellants had submitted sufficient evidence that the regulations had been enforced anywhere in the United States to create a genuine issue of material fact. See RCFC 56; cf. Brown v. United States, 73 F.3d 1100, 1105 (Fed.Cir.1996) (reversing a grant of summary judgment because there were disputed issues of material fact). The trial court determined that the appellants failed to present any evidence that despite the injunction the regulations were actually enforced anywhere at anytime during this period.
 
 
 24
 Appellants assert that Congress appropriated funds for the FDA that the FDA used to enter into contracts with the states to enforce the tobacco regulations by paying the states to perform the enforcement task. Appellants assert that the states were clearly agents of the federal government in the regulatory enforcement scheme. If that were so, the trial court would need to infer that the states, acting as agents for the federal government, enforced the regulations in contravention of the judicial stay against the FDA. This court, however, has previously rejected this agency argument with respect to the State of California in B&G Enterprises I, 220 F.3d at 1323-25, and it is to no avail here. We must follow the previous panel opinion of this court. Vas-Cath Inc. v. Mahurkar, 935 F.2d 1555, 1563, 19 USPQ2d 1111, 1117 (Fed.Cir. 1991) ("[W]e note that decisions of a three-judge panel of this court cannot overturn prior precedential decisions."). In B&G Enterprises I, this court explained that there could not be an agency relationship because an agency relationship "results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other to so act." 220 F.3d at 1323 (citing Restatement (Second) of Agency § 1(1)). The court determined that there was no manifestation by either the federal government or the State of California of an intent to create an agency relationship under the facts of the case. Id. Appellants have not suggested that the federal government dealt with the other states differently than it did with California. As in B&G Enterprises I, appellants' agency argument is premised on federal funding grants given to the states. The court in B&G Enterprises I rejected that argument, stating:
 
 
 25
 First, both the Supreme Court and our predecessor court ... have held that the federal government's conditioning a state or locality's receipt of federal funds on the state's taking a particular action does not make that state or locality an agent of the federal government.... [T]he conditional grant of funds to California did not subject the federal government to liability for California's actions.
 
 
 26
 Id. at 1323-24 (citations omitted). There is no reason to depart from this court's earlier holding; no agency relationship could be present because the federal government evinced no intent to create one.
 
 
 27
 Appellants also challenge the trial court's finding that the FDA complied with the stay in the Coyne Beahm case. However, they have failed to present any evidence to support this claim, even a simple declaration from a witness stating that she knew from personal knowledge that the FDA had enforced the regulation.[3]
 
 
 28
 Appellants have not shown that any issue of disputed fact remains concerning whether the FDA enforced the regulations. Therefore, as the vending machine tobacco regulations were never "in effect," and now never will be in effect, we shall not disturb the trial court's grant of summary judgment. The tobacco regulations did not effectuate a taking of any of the appellants' property because they were never enforced.
 
 
 II. Discovery
 
 
 29
 Appellants assert that the trial court erred in denying them discovery to determine whether or not the regulations were actually enforced at any time. In denying their motion to conduct discovery, the trial court noted that appellants had "produced absolutely no evidence to date to contradict the claim that the FDA did not enforce the tobacco vending machine regulations anywhere within the United States." A-1 Cigarette, No. 97-848C, slip op. at 2 (Ct.Fed.Cl. Nov. 15, 2000) (order denying discovery). Citing RCFC 56(g),[4] which governs whether a party opposing a motion for summary judgment should be entitled to take discovery prior to responding to the motion, the trial court noted that the party opposing the motion for summary judgment must file a sworn affidavit with the court stating the reasons that the party cannot respond to the motion without discovery. Id. at 2-3. The appellants in this case did not file such an affidavit. In denying the motion for discovery, however, the trial court relied more heavily on the absence of any support for the appellants' assertions of enforcement of the regulations. Id. at 3. The court properly noted that "[t]his court is not required to permit discovery based merely on the hope on the part of a plaintiff that it might find evidence to support its complaint." Id. (citations omitted).
 
 
 30
 This court has repeatedly addressed the question of when summary judgment can be granted in the absence of discovery. In Pure Gold, Inc. v. Syntex (U.S.A.), Inc., this court stated that "[s]ummary judgment need not be denied merely to satisfy a litigant's speculative hope of finding some evidence that might tend to support a complaint." 739 F.2d 624, 627, 222 USPQ 741, 744 (Fed.Cir. 1984). In Keebler Co. v. Murray Bakery Products, this court stated that "[a] party may not simply assert that discovery is necessary and thereby overturn summary judgment when it failed to comply with the requirement of Rule 56(f) to set out reasons for the need for discovery in an affidavit." 866 F.2d 1386, 1389, 9 USPQ2d 1736, 1739 (Fed.Cir.1989) (citations omitted); accord Sweats Fashions, Inc., v. Pannill Knitting Co., Inc., 833 F.2d 1560, 1567, 4 USPQ2d 1793, 1799 (Fed.Cir.1987) (citations omitted). Federal Rule of Civil Procedure 56(f), referred to in the quote from Keebler, is identical to RCFC 56(g), which applies in the Court of Federal Claims.
 
 
 31
 In this case, not only have appellants failed to demonstrate more than a "speculative hope" of finding evidence to support their claim of enforcement, they have also failed to avail themselves of the protection of RCFC 56(g) by not filing an affidavit explaining why they could not respond to the summary judgment motion without discovery. In light of appellants' failure to produce any evidence in support of their allegations, the trial court's denial of discovery was not an abuse of discretion.
 
 
 CONCLUSION
 
 
 32
 For the foregoing reasons, the trial court's grant of summary judgment for the United States is affirmed.
 
 
 AFFIRMED
 
 
 COSTS
 
 
 33
 No costs.
 
 
 
 Notes:
 
 
 [1]
 RCFC 12(c), which is identical to Federal Rule of Civil Procedure 12(c), states:
 After the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.
 
 
 [2]
 This may also occur where a court finds that it would be futile for a party to seek a discretionary decision, as inCienega Gardens, 265 F.3d at 1248 (treating an as applied challenge to a discretionary rule as an as applied challenge to a non-discretionary rule where it was futile for a party to seek a discretionary decision because of evidence that the discretion would not be exercised).
 
 
 [3]
 Appellants rely on several declarations of operators of cigarette vending machines. While many of these declarations assert that state or local government officials pressured them to remove vending machines from certain locations, none of the declarations state that theFDA enforced the regulations at any point, much less after they were to become effective.
 Appellants also rely on the declaration of Anne Kirchner, who worked in the Office of Policy of the FDA during the relevant period. Although appellants assert that her declaration is evidence of FDA's enforcement, the declaration explicitly states that the vending machines regulations were never enforced, and that only the age and identification regulations, which had not been stayed and had gone into effect earlier, were enforced.
 
 
 [4]
 RCFC 56(g) states:
 Should it appear from the affidavits of a party opposing the motion that such party cannot for reasons stated present by affidavit facts essential to justify such party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or deposition to be taken or discovery to be had or may make such other order as is just.
 
 
 
 34
 MICHEL, Circuit Judge, concurring.
 
 
 35
 I join the result and the rationale that the majority ultimately relies on. I write separately only to specify my disagreement about reaching the distinction between as-applied takings and facial takings, a distinction that the majority treats at length. Ante at 1356-58. As the majority itself notes, this distinction was never at issue in this case, and the plaintiffs never relied on the theory that the mere promulgation of the FDA's tobacco regulations could alone effectuate a constitutional taking. In my view, then, we simply have no occasion to search out and address this issue — if only in dicta — especially when the parties themselves have not done so. Prudence counsels in favor of leaving this discussion for another day.